# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 24-0117V

| | |
|---|---|
| JUDITH MORAN,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: October 7, 2025 |

*John Beaulieu*, Siri & Glimstad, LLP, Louisville, KY, for Petitioner.

*Austin Joel Egan*, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

On January 26, 2024, Judith Moran filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine received on October 25, 2022. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons set forth below, I find the vaccination alleged as causal was likely administered in Petitioner's left deltoid. Furthermore, I also find that Petitioner's injury was limited to her vaccinated (left) shoulder.

### I.  Relevant Procedural History

On June 27, 2025, about 17 months after the case was initiated, Respondent filed a Rule 4(c) Report arguing that Petitioner had not established entitlement to compensation. ECF No. 35. Specifically, Respondent argued that Petitioner's pain "was not limited to the vaccinated shoulder… First, petitioner was vaccinated in the contralateral arm as her vaccination. The vaccination record indicates petitioner was vaccinated in her right deltoid… but her injury was in her left deltoid…" Respondent's Report at 5. Furthermore, Respondent argues that "even if petitioner was vaccinated in the shoulder she claims, her first report of pain radiated outside her shoulder down her elbow and into her chest. Ex. 6 at 10. For both reasons, the preponderant evidence establishes that petitioner's pain was outside her vaccinated shoulder." *Id*.

On June 30, 2025, I issued a Scheduling Order stating that a fact hearing or additional briefing was not necessary, and that I intended to issue a written fact finding to resolve the issue of the identification of the arm of administration for the vaccination at issue in this case, as well as determine whether Petitioner's shoulder pain was limited to the shoulder in which she received the vaccination. ECF No. 38. On July 8, 2025, Petitioner filed a status report stating that both parties agreed that no additional evidence would be submitted regarding these issues and requested that I issue the fact finding. ECF No. 39. My ruling is set forth below.

### II.  Issues

The following issues are contested: (1) whether Petitioner received the vaccination alleged as causal in her right or left arm; and (2) whether Petitioner's pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine as administered as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)(ii)-(iv) (pain and reduced range of motion limited to the shoulder in which the intramuscular vaccine was administered).

### III.  Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section

11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). The Federal Circuit has said that

> Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events.

*Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005).

The Federal Circuit recently stressed, however, that records enjoy no automatic presumption of accuracy, despite their "trustworthy" evidentiary character. *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1384 (Fed. Cir. 2021). Indeed, "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998); *see also Lowrie*, 2005 WL 6117475 at *19 ("written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent").

The Court has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

Thus, medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare not only the medical records, testimony, but also all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational). And although later oral testimony that conflicts with medical records is less reliable as a general matter, it is appropriate for a special master to credit a petitioner's lay testimony where is does not conflict with the contemporaneous records. *Kirby*, 997 F.3d at 1382-84.

## IV. Finding of Fact

### A. Site of Vaccination

Based on a review of the entire record, including all medical records and affidavits, and the arguments in Respondent's Rule 4(c) Report, I find that Petitioner's October 25, 2022 flu vaccine was likely administered in her left arm, as she contends. The following points are particularly relevant to that finding:

- Petitioner's pre-vaccination medical records reveal no injuries, inflammation, or dysfunction in either shoulder or arm. Ex. 2 at 4 – 6.

- Petitioner received the flu vaccine at CVS Pharmacy on October 25, 2022. Ex. 3 at 9. The vaccine record states that the vaccine was administered into Petitioner's right deltoid. *Id.* In her sworn affidavit, however, Petitioner states that she is "certain" she received the vaccination in her left shoulder. Ex. 1 at 2.

- That same day, Petitioner purports[3] to have communicated by text to her friend Jackie, stating that "Ron [Petitioner's husband] and I got flu shots today and I can barely move my left arm," and she offers partially-dated evidence of this communication. Ex. 4 at 1. The next day (October 26, 2022),[4] Petitioner texted her friend Sharon, stating, "Ron and I went yesterday afternoon, and both of our arms are so sore." Ex. 5 at 1.

---

[3] The year of this text is not confirmed in the copy of the message submitted.

[4] The year of this text is not confirmed in the copy of the message submitted.

4

- On November 22, 2022, Petitioner saw orthopedist Dr. John Andrachuk and reported left shoulder pain. Ex. 6 at 10. The notes from this visit state, "[s]he complains of over 4 weeks of left shoulder pain. She said it started after she had a flu shot. Since then, she had had a throbbing pain, which radiates down the elbow and not the chest…" *Id*. Petitioner also reported difficulty doing dips and pushups. *Id*. On examination, Petitioner had some pain on palpation of the bicipital groove, normal active and passive range of motion, 4/5 abduction strength, no joint instability, and positive Neer, Hawkins, Speed, and Yergason tests. *Id.* Petitioner's left shoulder x-ray was normal, so the orthopedist ordered an MRI as he suspected a rotator cuff tear. *Id.* at 11. Dr. Andrachuk prescribed a Medrol Dosepak and instructed Petitioner to follow up. *Id.*

- Petitioner underwent an MRI on December 4, 2022. Ex. 7 at 2. The MRI demonstrated, "1. infraspinatus and mild supraspinatus tendinosis; no evidence of rotator cuff tear or muscular atrophy; 2. subacromial subdeltoid bursal effusion/bursitis. 3. acromioclavicular osteoarthritis." *Id*.

- On December 13, 2022, Petitioner returned to review the result of her MRI with Dr. Andrachuk. Ex. 6 at 28 - 30. Petitioner reported the Medrol pack gave her "some improvement," and that her range of motion had also improved *Id.* at 29. Petitioner was diagnosed with bursitis and impingement of the left shoulder. *Id.* at 29 – 30. Petitioner received a steroid injection and a referral to physical therapy ("PT"). *Id.* at 30.

- Petitioner underwent an initial PT evaluation on January 6, 2023. Ex. 12 at 2. Petitioner "reported having a flu vaccination and shoulder pain began right away." *Id.* Pain was reported at a 5/10 at best and an 8/10 at worst. *Id.* The pain was described as "throbbing, constant, worse in AM, aching, dull." *Id.* at 4. Physical examination showed a limited range of motion. *Id.* Petitioner attended four PT sessions between January 6, and January 20, 2023. *Id.* at 3-11. At the last one, Petitioner's was "educated on condition of shoulder and treatments needed to improve. Patient declined and wanted to discontinue treatment." *Id.* at 11.

- On March 28, 2023, Petitioner returned to Dr. Andrachuk. Ex. 13 at 99. Petitioner reported that she had done "quite well" after her cortisone injection, but that her pain had returned, and PT was not particularly helpful. *Id.* Petitioner described her left shoulder pain as "sharp in nature" primarily lateral and anterior. *Id.* It was noted that the MRI showed no evidence of

5

any significant rotator cuff tear. *Id.* Petitioner received a second cortisone injection at this visit. *Id.* at 100.

- Eight months later, on December 5, 2023, Petitioner returned to Dr. Andrachuk's office, for complaints of continuing left shoulder pain. Ex. 13 at 116. Petitioner reported no changes in symptoms since her last visit and wanted to discuss her treatment options. *Id.* Physical examination showed no tenderness, passive and active range of motion, rotator cuff strength was 5/5 and there was no joint instability. *Id.* at 117. Dr. Andrachuk recommended that Petitioner try a different physical therapist with a focus on rotator cuff conditioning. *Id*. He advised, however, that Petitioner may need to move forward with a decompression procedure of her left shoulder. *Id.*

- Petitioner began PT at One Point Physical Therapy on January 2, 2024. Ex. 14 at 3. Petitioner reported to the physical therapist that after she received the flu shot in her left shoulder she began to experience "significant pain" and "continued to notice pain for a few weeks after." *Id.*

- Petitioner attended five PT sessions between January 2 and January 16, 2024. Ex. 14 at 3 – 16. At Petitioner's last session on January 16, 2024, she reported having "improvements" in her left shoulder. *Id.* at 16.

- Petitioner's husband, Ron Huey, filed a sworn declaration on December 13, 2024. Ex. 17. Mr. Huey described how he and Petitioner went to the CVS Pharmacy to receive their seasonal flu vaccination. *Id.* at 1. He described that they were sitting in a small room with one chair for the person receiving the vaccination and that the chair was "almost perfectly wedged into the right angle where the walls met." *Id.* He stated that due to the "logistics" of the room and the positioning of the chair, the shot could only realistically be administered into the person's left arm. *Id.* After the vaccination, Mr. Huey recalled that "these vaccine administrations were not normal" and that "the vaccine administration hurt. This was totally out of the ordinary and different from post-vaccine soreness." *Id.* In the weeks following, Mr. Huey recalled that his left shoulder pain decrease, but Petitioner's pain continued and was "intense." *Id.* He recalled that Petitioner's pain lasted several weeks before she sought medical attention. *Id*. Mr. Huey stated that despite numerous medical interventions for her left arm and shoulder, Petitioner continued to suffer from pain, soreness, and functional limitations of her left shoulder. *Id.* at 3.

Based on a review of the entire record, including the Petition, all medical records and affidavits, and the arguments in Respondent's Rule 4(c) Report, I find that Petitioner's October 25, 2022 flu vaccine was more likely than not administered in her left arm, as she contends.

Only the initial vaccination record indicates that Ms. Moran received the flu vaccine to her right shoulder. Ex. 5 at 3; Ex. 2 at 2. All subsequent records document Ms. Moran's allegation that she received the flu vaccine to her left shoulder. And not a single record (other than the aforementioned vaccination record) contradicts her assertion. *See e.g.*, Ex. 6 at 10 (November 22, 2022, Petitioner complained to orthopedist of "over 4 weeks of left shoulder pain". On examination, Petitioner had positive Neer, Hawkins, Speed, and Yergason impingement tests of the left shoulder); Ex. 7 at 2 (December 4, 2022, results of left shoulder MRI); Ex. 6 at 30 (December 13, 2022, Petitioner received a steroid injection to her left shoulder); Ex. 12 at 2-11 (Petitioner underwent 5 PT sessions for her left shoulder from January 6 to January 20, 2023); Ex. 13 at 100 (On March 28, 2023, Petitioner received a second steroid injection to her left shoulder); Ex. 14 at 3-16 (Petitioner attended five PT sessions for her left shoulder from January 2 to January 16, 2024).

Ms. Moran also submitted two text messages to her friends: one from the day of vaccination, and the other from the day after, and in each she complained of left shoulder pain from the flu vaccination. Ex. 4 at 1 (October 25, 2022, *day of vaccination*, Petitioner texted her friend Jackie stating, "Ron and I got flu shots today and I can barely move my left arm."); Ex. 5 at 1 (October 26, 2022, *one day post-vaccination*, Petitioner texted her friend Sharon stating, "Ron and I went yesterday afternoon, and both of our arms are so sore."). While this kind of evidence *alone* might not resolve the question, in this case it corroborates contemporaneous record proof – and thus should not be rejected as Respondent contends.

Thus, the overall medical records, coupled with Petitioner's text messages and witness affidavits, establish that Petitioner consistently and repeatedly reported to treaters left shoulder pain that was caused by a flu vaccine received *in that shoulder*. This is sufficient proof to overcome the contrary administration record (which lacks corroboration on its own). The subsequent treatment records gain strength as well given their temporal proximity to the date of vaccination. Otherwise, there is no reason to give the single record of vaccine administration more weight simply because it came first, in the absence of other evidence that corroborates it.

### B. *Pain and Reduced Range of Motion Limited to Arm of Vaccination*

To establish a Table SIRVA, a petitioner's pain and reduced ROM must be limited to the shoulder in which the vaccination alleged as causal was administered. 42 C.F.R. § 100.3(c)(10)(iii). Respondent argues that Petitioner received the flu vaccine to her right shoulder, and thus, could not satisfy this criterion, but my resolution of the situs issue removes that basis for objection.

Respondent also briefly argued that "even if petitioner was vaccinated in the shoulder she claims, her first report of pain radiated outside her shoulder down her elbow and into her chest." Respondent's report at 5, *citing* Ex. 6 at 10. But this is the only citation in the record that Petitioner makes to pain outside the left shoulder area. In her treatment records, Petitioner is only being treated for left shoulder pain and her PT was focused on her left shoulder. Ex. 14 at 3-11. Thus, I find that Petitioner's pain and reduced range of motion was limited to her arm of vaccination, her left arm.

Given my findings of fact, Respondent should evaluate and provide his current position regarding the merits of Petitioner's case.

## V.      Scheduling Order

**Accordingly, the following is ORDERED:**

**(1) By <u>Tuesday, November 10, 2025,</u> Petitioner shall file all updated medical records.**

**(2) Respondent shall file, by no later than <u>Monday, November 17, 2025,</u> an amended Rule 4(c) Report reflecting Respondent's position in light of the above fact-finding.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master